IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER HALLON,

      Plaintiff,                    No. CIV S-11-0462 GEB GGH

vs.

CITY OF STOCKTON, et al.,           ORDER

      Defendants.

/

      Previously before the court was joint briefing filed by the parties and set by the court on its law and motion calendar for February 2, 2012.  Richard Hyppa appeared for plaintiff.  Marciana Arredondo appeared for defendants.  After reviewing the joint statement and hearing oral argument, the court now issues the following order.

BACKGROUND

      According to the complaint filed February 18, 2011, plaintiff alleges that on the night of January 15, 2010, defendant police officers Slate, Pierce, Tiner and Vina, Jr., violated plaintiff's constitutional rights by unlawfully detaining him and beating him, and using a TASER.  Claims are for violation of the First, Fourth, Fifth and Fourteenth Amendments, battery, false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Plaintiff seeks monetary damages.

\\\\\

The instant dispute concerns plaintiff's request for production numbers 1 through 4, requesting employee files of the four defendant officers, and request number 6, for all documents concerning the internal investigation of the incident at issue by the City of Stockton. Defendants object to request numbers 1 through 4 and 6[1] on the basis of relevance, overbreadth, privacy, official information privilege, and claims of privilege under state law, including Cal. Evid. Code § 1043 and 1045, and Cal. Penal Code § 832.7. The parties have stipulated to *in camera* review of the documents by the court.

DISCUSSION

    I.  <u>Applicability of Federal Law to Claims of Privilege</u>

Federal law applies to privilege based discovery disputes involving federal claims, even if allied with by pendent state law claims. <u>See</u>, e.g., <u>Pagano v. Oroville Hospital</u>, 145 F.R.D. 683, 687 (E.D.Cal. 1993); <u>Martinez v. City of Stockton</u>, 132 F.R.D. 677, 681-83 (E.D.Cal. 1990). Privileges are narrowly construed, because they impede the full and fair discovery of the truth. <u>Eureka Financial Corp. v. Hartford Acc. and Indemnity Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991). Further, the party asserting a privilege has the burden to establish that it applies. <u>See</u>, <u>e.g.</u>, <u>United States v. O'Neill</u>, 619 F.2d 222, 227 (3rd Cir. 1980).

The Supreme Court has reemphasized that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

<u>Jaffee v. Redmond</u>, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing <u>United States v. Bryan</u>,

---

[1] Defendants' only objection to request number 6 was that it was vague, ambiguous, and overbroad. Without waiving these objections, defendants stated they were producing responsive documents, Bate stamped 1-304. (Hyppa Decl., Ex. B.)

339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86 (9th Cir. 1997).

In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state law claims, courts disagree about the extent to which state privilege law remains applicable in discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled. Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court.) This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent significantly assists in applying privilege law to discovery disputes. See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D. 548 (E.D. Cal. 1990). Other courts, however, disagree. See, e.g., Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (stating that Pagano/Martinez/Cook have been overruled).[2]

The other district courts in this Circuit and elsewhere seemingly have overlooked binding precedent. The Ninth Circuit continues to hold that "[i]n determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law." Lewis v. United States, 517 F.2d 236, 237 (9th Cir. 1975) (citations omitted).

---

[2] Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano, Martinez, and Cook. For starters, the cases were not referenced by Jaffe. More importantly, Jaffe itself expressly noted the disagreement on the extent to which federal privilege law was informed by its state law counterpart, and expressly held that it would not rule on the issue. "We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law....we express no opinion on the matter." Jaffe, 518 U.S. at 15 (n.15), 116 S. Ct. at 1931. Jackson is based on the questionable premise that the Supreme Court's determination not to consider an issue impliedly overrules cases discussing the issue. The cases that have followed Jackson's erroneous interpretation of Jaffe, seemingly without reference to footnote 15 in Jaffe, are likewise flawed in this respect. See Folb v. Motion Picture Indus. Etc., 16 F. Supp. 2d 1164 (C.D. Cal. 1998); Humphreys v. Regents of University of Cal., 2006 WL 335275 (N.D. Cal. 2006). The Ninth Circuit, however, has expressly considered the issue. See Lewis, 517 F.2d at 237, cited in text.

This court considers state law in mixed federal/state claims. See Pagano. While federal law is controlling, id. at 687, state law is nevertheless relevant, especially in mixed claims where one of the elements of the federal claim is that a *state* actor was acting under color of *state* law when the federal right was violated – a category which includes every 42 U.S.C. § 1983 action.[3] It has been the policy of this court, "when state privilege law is consistent, or at least compatible, with federal privilege law," to read the two together "in order to accommodate the legitimate expectations of the state's citizens." Id. at 688; accord Martinez, 132 F.R.D. at 681 ("application of state rules [is appropriate] when that application would not be inconsistent with federal law"); but see Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp.2d 1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); Jackson, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (same). Several reasons justify this policy. First, as previously noted, the Ninth Circuit has found that state law may inform the federal privilege question. Lewis, supra. Second, the Supreme Court explicitly noted in Jaffe that the matter is unsettled.

Moreover, not only this court, but others as well, use state law to assist in defining the parameters of federal privilege. See, e.g., Memorial Hospital etc. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981); Hysell v. Pliler, 2007 WL 273882 *1 (E.D. Cal. 2007); Gottleib v. Wiles, 143 F.R.D. 235, 237 (D.Colo. 1992); Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989); Unger v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); Lora v. Board of Education, 74 F.R.D. 565 (E.D.N.Y. 1977).

Third, federal courts frequently look to state law for guidance in § 1983 lawsuits. Indeed, the Supreme Court has recognized:

> In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under § 1983 . . . . [B]y its terms, §1988 authorizes federal courts to disregard an otherwise

---

[3] Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

applicable state rule of law only if the state law is 'inconsistent with the Constitution and laws of the United States.'

Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980) (citations omitted).

Further, the Court has acknowledged:

This statutory reliance on state law obviously means that there will not be nation-wide uniformity on these issues [contemplated by §1988].

Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978). See also Moor v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does not permit wholesale incorporation of state causes of action, but state law may supplement established federal law). The preceding Supreme Court cases, while not directly on-point with the privilege issues presented by this discovery motion, nevertheless stand as strong authority for the principle that application of state law is not foreign to § 1983 jurisprudence. Lower court cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities," Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to consider congressional intent that state law play an important, and at times dispositive, role in § 1983 litigation.[4] Moreover, as discussed below, §1983 cases can be brought in state court where the state court will apply its own rule of privilege. So much for the exclusivity of federal law application.

Fourth, recognition of important state interests which do not conflict with federal law is a bedrock principle of our federal system. "Consideration under the Supremacy Clause

---

[4] While the notion of national uniformity in federal practice, assuming that such is possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it was with the usurpation of state law where such was not necessary.

5

starts with the basic assumption that Congress did not intend to displace state laws." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case). While it is at times necessary to flex the federal muscle when federal and state law conflict, such flexing should be done only as a last resort. While preemption is not the issue here, there is no reason to ignore basic principles of federalism in applying privilege law.

Finally, this entire action, including the federal § 1983 claim, could have been brought in state court.[5] The state court would apply state privilege law. In addition, in a federal court civil rights case in which the federal claims drop out, it is not beyond the pale to have a case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only state claims. In such cases, only state privileges seemingly would apply. Thus, in mixed claim cases where federal and state privileges are consistent, federal cases which fail to even consider state privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege standards, depending on whether the lawsuit is brought in state or federal court, or whether federal claims ultimately survive.[6]

The inevitable question is – if the state and federal privileges at issue are consistent, why not simply apply federal privilege law? As discussed in Pagano, the point of considering state law as a guide is not to determine whether a specific privilege exists, but to determine how to perform the "balancing" that most privilege determinations, state or federal, require. Judges frequently are tempted to create multi-pronged tests for deciding federal common law privilege issues, born from individual creativity (and sometimes from the myopia of having considered the issues in particular cases). In contrast, similar state privileges frequently

---

[5] Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims. Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

[6] Cf. Menses v. U.S. Postal Service, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since Federal Tort Claims Act cases can be brought only in federal court, there is a need for national uniformity in rules of evidence, and no corresponding need to apply state privilege law even though the substance of the claims is decided by reference to the state law).

are codified privileges which have received the attention and consideration of the peoples' representatives in the respective legislatures, including competing considerations of any balancing applicable to those privileges. In terms of setting policy, the wisdom of the collective legislature is generally greater than the wisdom of particular judges. Our system of government is based on this premise. Moreover, the standards set forth by the legislature are generally more structured and more specific, and therefore provide a uniform starting point for any analysis. Therefore, it makes little sense to avoid using as a guidepost, standards the legislature has already provided.

For all of the above reasons, in deciding whether privilege should preclude disclosure of documents in a civil rights case, this court will continue to consider applicable state statutes establishing policy and criteria for disclosure. Jackson, supra and its progeny are incorrect in their premise that the undersigned's cases have been overruled, and respectfully, incorrect in their substance.

II. Governmental Privileges

The federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names: (1) the "official information privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment discrimination case which raised only federal claims); (2) the "law enforcement privilege," In re Department of Investigation of City of New York, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and civil functions); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law enforcement privilege, that law enforcement privilege is somewhat narrower than official information privilege); and (3) a type of "executive privilege," Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992). The federal privileges are based on the following rationale:

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement

personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re Dept. of Investigation, 856 F.2d at 484.

This federal "qualified" governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records. Cal. Penal Code § 832.7.[7] Disclosure requires "good cause" (Cal. Evid. Code §1043),[8] relevance, and unavailability by other means (Cal. Evid. Code §1045). [9]

---

[7] Cal. Penal Code § 832.7 provides in part:

(a) Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

[8] Cal. Evidence Code § 1043 provides in part:

(a) In any case in which discovery or disclosure is sought of peace custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .
(b) The motion shall include ... (3) Affidavits showing good cause for the discovery or disclosure sought ...

[9] Cal. Evid. Code § 1045 provides:

(a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.

(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.

The California statutes codifying the governmental privilege balance the need for disclosure with the government's legitimate need to acquire and maintain confidential information for sensitive activities. See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19 Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971). As these cases demonstrate, the California Legislature understood quite well the need for some secrecy in government affairs, and was aware that permitting unrestricted disclosure might chill the ability of government officials to obtain candid, confidential information from persons otherwise reluctant to become involved or influenced by interests of self-preservation. It is critical to note that Cal. Evid. Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, *so long as they are relevant* to pending litigation. Accordingly, relevance is the dispositive factor in directing disclosure of internal

---

> (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.
>
> (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.
>
> (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

      The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information. "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case." Martinez, 132 F.R.D. at 682. That analysis is confirmed.

affairs investigations.[10]

III. Analysis

Categories of documents sought are employee files of the four defendant officers involved in the incident, Slate, Pierce, Tiner, and Vina, Jr., as well as documents relating to the internal investigation of the incident. Disposition of the requests will be made with the aforementioned standards in mind.

Numbers 1 through 4 - Employee Files

Plaintiff seeks production of these files to check whether there were other incidents of use of force by these on-scene officers, and how the City of Stockton treated them, indicating a pattern. Plaintiff agrees to redaction of personal information, such as address, social security number, and family information. Defendants shall produce all documentation in the files which pertain to the use of excessive force by the defendant officers only where there was a finding of less than complete exoneration, for five years preceding the January 5, 2010 incident only. Defendants shall further turn over those portions of the personnel files relating to training regarding the use of force. Plaintiff's request is denied in all other respects. Any such documents may be produced pursuant to a stipulated protective order.

Number 6 - Internal Investigation Documents

Plaintiff seeks this information, not only for its relevance to the incident, but also to determine if the City of Stockton ratified the conduct or disciplined the officers. Defendants argue that production of internal affairs investigation files would have a chilling effect on future internal affairs investigations. If these documents are disclosed, defendants request that they be limited to the names and addresses of relevant witnesses.

\\\\\

---

[10] Internal affairs investigations are "investigations of complaints" covered by Cal. Evid. Code § 1045. See City of Fresno v. Superior Court, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296 (1988).

It is critical to note that Cal. Evid. Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, *so long as they are relevant* to pending litigation.  Accordingly, relevance is the dispositive factor in directing disclosure of internal affairs investigations.  Defendants shall redact any identifying information of individuals not parties to this action from this report, and then produce the entirety of the internal affairs file pertaining to the underlying incident.  This file may also be produced pursuant to a protective order.

CONCLUSION

For the reasons stated in this opinion, IT IS ORDERED that:

1. The parties' "joint briefing regarding disclosure of documents pursuant to in camera inspection," construed as plaintiffs' motion to compel production of documents and joint statement, filed January 20, 2012, (dkt. # 15), is granted in part and denied in part.

2. Defendants shall produce discovery as specified herein within fourteen (14) days of the February 2, 2012 hearing.  Production may take place pursuant to a stipulated protective order.[11]

DATED:   February 3, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:076/Hallon0462.dsy.wpd

---

[11] See E.D. Cal. R. 141, 141.1, Pintos v. Pacific Creditors Ass'n., 605 F.3d 665, 678 (9th Cir. 2010) (finding compelling reasons required in dispositive motions), and Phillips v. General Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002) (holding good cause necessary in non-dispositive motions).